## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

Christopher M. Palermo

      v.                                    Civil No. 11-cv-337-JL

William Wrenn, Commissioner,
New Hampshire Department of
Corrections, et al.[1]

## REPORT AND RECOMMENDATION

      Christopher Palermo has filed a complaint (doc. no. 1) and an addendum to the complaint (doc. no. 5),[2] pursuant to 42 U.S.C. § 1983, alleging that employees of the New Hampshire Department of Corrections ("DOC") violated his constitutional rights while he was incarcerated at the New Hampshire State Prison ("NHSP"). The matter is before the court for preliminary review to determine, inter alia, whether the complaint states any claim

---

[1]In addition to Commissioner Wrenn, Palermo has named the following New Hampshire State Prison ("NHSP") employees as defendants to this action: Warden Richard Gerry; Medical Director Stevenson (first name unknown ("FNU")); Lt. FNU Casico; Sgt. FNU Barbral; Sgt. FNU Brown; Corrections Officer ("C.O.") FNU Marion; C.O. FNU Dion; Sgt. Dave Carroll; Cpl. FNU Orlando; C.O. FNU Rhodes; Cpl. FNU Towers; C.O. FNU Wrenn; Chaplain James Daly; Nurse Jacky (last name unknown ("LNU")); Nurse Denise LNU; and Nurse Anne Marie LNU.  Although they are not listed in the caption of the complaint, Palermo identifies NHSP Classifications Officers Kim Lacasse and Daniel Been as defendants in the narrative of the complaint, and they will be so deemed.

[2]The complaint and addendum, taken together, are construed to be the complaint in this matter for all purposes.

upon which relief might be granted.  See 28 U.S.C. § 1915A(a);
United States District Court for the District of New Hampshire
Local Rule ("LR") 4.3(d)(2).

## Standard of Review

Under LR 4.3(d)(2), when an incarcerated plaintiff
commences an action pro se, the magistrate judge conducts a
preliminary review.  The magistrate judge may issue a report and
recommendation after the initial review, recommending that
claims be dismissed if the court lacks subject matter
jurisdiction, the defendant is immune from the relief sought,
the complaint fails to state a claim upon which relief may be
granted, the allegation of poverty is untrue, or the action is
frivolous or malicious.  See id. (citing 28 U.S.C. § 1915A &
Fed. R. Civ. P. 12(b)(1)).  In conducting a preliminary review,
the magistrate judge construes pro se pleadings liberally, to
avoid inappropriately stringent rules and unnecessary
dismissals.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per
curiam) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976),
to construe pleadings liberally in favor of pro se party);
Castro v. United States, 540 U.S. 375, 381 (2003).

To determine if the complaint states any claim upon which
relief could be granted, the court applies a standard analogous

to that used in reviewing a motion to dismiss filed under Fed.
R. Civ. P. 12(b)(6).  The court decides whether the complaint
contains sufficient factual matter, accepted as true, to state a
claim to relief that is plausible on its face.  See Ashcroft v.
Iqbal, 556 U.S. 662, ___ , 129 S. Ct. 1937, 1949 (2009).

     To make this determination, the court employs a two-pronged
approach.  See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1,
12 (1st Cir. 2011).  The court first screens the complaint for
statements that "merely offer legal conclusions couched as fact
or threadbare recitals of the elements of a cause of action."
Id. (citations, internal quotation marks and alterations
omitted).  A claim consisting of little more than "allegations
that merely parrot the elements of the cause of action" may be
dismissed.  Id.  The second part of the test requires the court
to credit as true all non-conclusory factual allegations and the
reasonable inferences drawn from those allegations, and then to
determine if the claim is plausible.  Id.  The plausibility
requirement "simply calls for enough fact to raise a reasonable
expectation that discovery will reveal evidence" of illegal
conduct.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).
The "make-or-break standard" is that those allegations and
inferences, taken as true, "must state a plausible, not a merely

conceivable, case for relief." Sepúlveda-Villarini v. Dep't of Educ., 628 F.3d 25, 29 (1st Cir. 2010); see Twombly, 550 U.S. at 555-56 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (internal citations and footnote omitted)).

Evaluating the plausibility of a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at ___, 129 S. Ct. at 1950 (citation omitted).  In doing so, the court may not disregard properly pleaded factual allegations or "attempt to forecast a plaintiff's likelihood of success on the merits." Ocasio-Hernández, 640 F.3d at 13.  "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint."  Id.

## Discussion

### I.   Section 1983

A government official may be held personally liable under 42 U.S.C. § 1983 if, acting under color of state law, the official caused the deprivation of a federal constitutional or statutory right.  Section 1983 states, in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory or the District of Columbia, subjects, or
> causes to be subjected, any citizen of the United
> States or other person within the jurisdiction thereof
> to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall
> be liable to the party injured in an action at law,
> suit in equity, or other proper proceeding for redress
> . . . .

Id.; see also Sanchez v. Pereira-Castillo, 590 F.3d 31, 40-41

(1st Cir. 2009) ("Section 1983 requires three elements for

liability: deprivation of a right, a causal connection between

the actor and the deprivation, and state action.").  In his

complaint, Palermo asserts claims against individuals acting

under color of state law, alleging that they have violated his

constitutional rights.  As such, Palermo's claims arise under

§ 1983.[3]


II.  Conditions in the Secure Psychiatric Unit

    A.  Facts

    Palermo alleges that while he was housed at the NHSP's

Secure Psychiatric Unit ("SPU"), he was made to sleep on the

floor for three weeks without explanation.  Palermo alleges that

---

[3]The claims, as identified herein, will be considered to be
the claims raised in the complaint for all purposes.  If Palermo
disagrees with the claims as identified here, he must properly
file an objection to this report and recommendation or move to
amend his complaint.

during the time he was forced to sleep on the floor, he did not pose any risk to himself or anyone else.

On June 30, 2011, Palermo was told that if he complained about his housing conditions, his cell lights would be left on. C.O. Wrenn then went to Palermo's cell, turned on Palermo's light, and told Palermo that Lt. Casico had ordered the lights to be turned on.

Palermo further states that the other inmates housed in SPU would yell and bang on surfaces so loudly that Palermo could not sleep.  Palermo states that prison officials would allow the noise to continue for up to thirty hours at a time without doing anything to stop it.  As a result, Palermo states that he suffered from sleep deprivation.

B.   <u>Legal Analysis</u>

Palermo alleges that while he was housed in SPU, the conditions of his confinement violated his Eighth Amendment right not to be subjected to cruel and unusual punishment in the guise of inhumane prison conditions.  While inmates are not guaranteed comfortable conditions, they are protected by the Eighth Amendment from conditions of confinement which amount to cruel and unusual punishment or conditions that are inhumane or deny the inmate the minimal measure of the necessities of

civilized life.  See Farmer v. Brennan, 511 U.S. 825, 834 (1994).  "[C]onditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need . . . ."  Wilson v. Seiter, 501 U.S. 294, 304 (1991) (citation omitted).

The court undertakes a two-part inquiry to determine if an inmate's Eighth Amendment challenge to the conditions of his confinement states a plausible claim.  First, the court must determine whether the conditions at issue were "sufficiently serious" so that "a prison official's act or omission . . . result[ed] in the denial of the minimal civilized measure of life's necessities."  Farmer, 511 U.S. at 834 (internal quotations and citation omitted).  If an inmate has established a sufficiently serious condition, the court must examine whether prison officials acted with "deliberate indifference" to the conditions in question.  Wilson, 501 U.S. at 302.  An official acts with "deliberate indifference" if he knows that an inmate faces a substantial risk of serious harm, and yet disregards that risk by failing to take reasonable measures to abate it. See Farmer, 511 U.S. at 847.

"[S]leep constitutes a basic human need, and conditions designed to prevent sleep may violate the Eighth Amendment." Johnson v. Tex. Bd. of Criminal Justice, 281 F. App'x 319, 322 (5th Cir. 2008) (existence of noise intentionally designed to deprive inmate of sleep may violate the Eighth Amendment); see also Stewart v. Beard, 417 F. App'x 117, 119-20 (3d Cir. 2011) (constant illumination causing sleep disorders or deprivation and creating psychological problems can state Eighth Amendment claim, but low-intensity lighting kept on at night for legitimate penological reasons did not violate Eighth Amendment). Palermo alleges here that the conditions of his confinement combined to make it difficult for him to sleep.

The assertions in Palermo's complaint are sparse. Palermo does not state how long he was deprived of sleep (except to say that on at least one occasion, the noise preventing him from sleeping lasted for thirty hours), or whether he suffered, or was at risk of suffering, any ill effects to his mental or physical health as a result. Further, while Palermo alleges that officers allowed noisy conditions to occur and intentionally turned on the lights and made him sleep on the floor, nothing in the complaint alleges that the officers who imposed the conditions did so in furtherance of an intention to

deprive Palermo of sleep, or were otherwise deliberately indifferent to a serious risk of harm to Palermo.

Palermo has described unpleasant and uncomfortable conditions at SPU.  Palermo has also alleged facts that demonstrate that those conditions were known to prison officials.  Palermo has failed, however, to allege sufficient facts to allow the court to find that he was actually subjected to a risk of serious harm, or that any officer at the prison actually knew that he was at such risk and disregarded or failed to abate the risk.  Accordingly, Palermo has alleged insufficient facts to state an Eighth Amendment claim based on the conditions of his confinement at SPU.

III. <u>Access to the Courts</u>

A.   <u>Facts</u>

Palermo alleges that while he was in SPU, he requested his legal paperwork numerous times.  When Palermo requested his paperwork, C.O. Marion, the officer in charge of property at the prison, asked Palermo why he wanted it, and then told Palermo that he would not "giv[e] [Palermo] anything to help [Palermo] sue the prison system."

Palermo further asserts that Casico was the officer responsible for providing inmates access to the prison law

library.  Palermo requested Casico's permission to go to the
library to work on this lawsuit, and another action pending in
the courts, telling Casico that he was at risk of missing a
filing deadline without library access.  Palermo asserts Casico
told him that the library "broke," and then (presumably
sarcastically) offered to call Palermo a taxi to take him
downtown.

    B.   <u>Legal Analysis</u>

    "[P]risoners have a constitutional right of access to the
courts."  <u>Bounds v. Smith</u>, 430 U.S. 817, 821 (1977), overruled
in part on other grounds by <u>Lewis v. Casey</u>, 518 U.S. 351, 354
(1996).  To provide adequate access, prison officials must
"'assist inmates in the preparation and filing of meaningful
legal papers by providing prisoners with adequate law libraries
or adequate assistance from persons trained in the law.'"
<u>Boivin v. Black</u>, 225 F.3d 36, 42 (1st Cir. 2000) (quoting
<u>Bounds</u>, 430 U.S. at 828).  To state a claim that he has been
denied such access, an inmate must allege more than a lack of
legal research materials or assistance, but must also assert
facts that "demonstrate that the alleged shortcomings in the
library or legal assistance program hindered his efforts to
pursue a legal claim."  <u>Lewis</u>, 518 U.S. at 351.  To demonstrate

such a hindrance, the inmate must show "that an actionable claim
has been lost or rejected or that presentation of the claim is
currently being prevented." Guglielmo v. N.H. State Prison, 111
F.3d 122, *1 (1st Cir. 1997) (unpublished table decision)
(citing Lewis, 518 U.S. at 356).

While Palermo states that he was at risk of missing a
filing deadline if Casico denied him access to the law library,
he has not alleged that either of those possibilities
materialized, or that any pending civil or criminal case has
otherwise been adversely affected by any lack of access to the
law library.  Palermo has thus failed to state a claim upon
which relief might be granted for any alleged violation of his
right of access to the courts.

IV.   Interference with the Right to Counsel

      A.   Facts

Palermo asserts that Casico told Palermo that an officer
would have to read his legal paperwork before Palermo could have
access to it.  When Palermo complained that reading his legal
paperwork would violate his rights, Sgt. Casico said to him, "Do
I look like I give a damn about your rights?"

Palermo further states that on July 20, 2011, Sgt. Carroll,
Cpl. Orlando, C.O. Rhodes, and Cpl. Towers entered his cell and

seized discovery concerning a pending criminal case.  Palermo
states that he had made notes on the papers concerning things he
wanted to bring to the attention of his attorney.  The officers
kept the materials for more than four hours.  Cpl. Towers then
returned the paperwork and told Palermo that Sgt. Carroll was
going to forward copies of the paperwork to the prosecutor in
Palermo's case.

   B.   Legal Analysis

   The Sixth Amendment protects a criminal defendant's right
to the assistance of counsel in the proceedings against him.
U.S. Const. amend. VI.  "[S]uch right can be meaningfully
implemented only if a criminal defendant knows that his
communications with his attorney are private and that his lawful
preparations for trial are secure against intrusion by the
government, his adversary in the criminal proceeding."  Cooper
v. Mayfi, No. C 06-4872 MJJ (PR), 2008 WL 608336, *10 (N.D. Cal.
Mar. 3, 2008) (citing Weatherford v. Bursey, 429 U.S. 545, 553
n.4 (1997)).  The Sixth Amendment is not violated, however,
simply by the government's intrusion into the relationship.  See
United States v. DeCologero, 530 F.3d 36, 64 (1st Cir. 2008).
To state a Sixth Amendment violation, plaintiff must also
demonstrate that some prejudice arose out of the intrusion.  See

id.  A complaint sufficiently alleges prejudice by demonstrating that confidential communications were conveyed to the prosecution as a result of the government intrusion into the attorney-client relationship.  See id. (finding no Sixth Amendment claim asserted where plaintiff did not show, or even allege, that confidential information was provided to the prosecutor); see also Weatherford, 429 U.S. at 558 ("[U]nless [the informant] communicated the substance of the [attorney-client] conversations to the government and thereby created at least a realistic possibility of injury to [the criminal defendant] or benefit to the State, there can be no Sixth Amendment violation.").

Here, Palermo alleges that Casico expressed an intention to read Palermo's legal materials, and that one officer stated that another officer was going to turn copies of his notated discovery over to the prosecution in his case.  Palermo has not alleged, however, that either of those threatened events occurred, or that the pending matter to which the relevant legal materials related was adversely affected by the disclosure of information to the prosecution in his case.  Palermo has therefore failed to state any claim upon which relief might be

granted asserting interference with his Sixth Amendment right to counsel.

V.    Religious Practices

    A.    Facts

Palermo asserts that he is a member of the Asatrú religion.[4] Since being at SPU, Palermo has requested permission to attend religious services and asked for his religious property that, he states, is necessary for the observance of his religious holy days.  In response to his request, Lt. Casico told Palermo that there is no such religion as Asatrú, and that Asatrú is considered to be akin to white supremacy at the prison.

Palermo complained to Medical Director Stevenson, the official in charge of SPU, about the denial of religious items and services.  Stevenson said that he would look into it, but Palermo claims that he never did.

_____

[4] DOC Policy and Procedure Directive 7.17(III)(D) defines a "Recognized Faith Group" as "[a] religion, religious denomination, or sect supported by literature stating religious principles and recognized by a group of persons who share common ethical, moral or intellectual views which are not defamatory, racial, political or derisive in nature."  Accepting Palermo's assertions in the complaint as true, the court can reasonably infer that Asatrú could qualify as a recognized faith group at the prison.  The court presumes therefore, for purposes of preliminary review, that Asatrú is a recognized religion.

Palermo further asserts that since he has been at the NHSP, he has been requesting a diet consistent with that mandated by his religion.  Palermo has provided documentation to NHSP Chaplain James Daly supporting the legitimacy of his request for a religious diet.  Daly denied Palermo's request, stating "we only provide diets to Jews, muslims and buhdists (sic)."

Palermo requested religious literature from Daly.  Daly denied that request as well.  Palermo asserts that Daly regularly provides free religious literature to inmates of non-Asatrú faiths.

B.    Legal Analysis

1.    RLUIPA

The Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc, et seq. ("RLUIPA"), provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in [42 U.S.C. § 1997], even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).  To state a claim under RLUIPA, a plaintiff must assert that a substantial burden has been placed on the exercise of his religion.  See Crawford v. Clarke, 578

F.3d 39, 43 (1st Cir. 2009).  The First Circuit has not defined what constitutes a "substantial burden" on the exercise of religion, but has assumed a prima facie showing of "substantial burden" was made where a restriction put "substantial pressure on an adherent to modify his behavior and to violate his beliefs."  Spratt v. R.I. Dep't of Corrs., 482 F.3d 33, 38 (1st Cir. 2007).

Once a plaintiff claims a "substantial burden" on his religious practice, the burden shifts to the government to demonstrate that the restriction in question furthers a "compelling" government interest and does so by the "least restrictive means" available.  Id.  Accordingly, to state a claim for relief, Palermo need only allege that his religious practice was "substantially burdened" by the challenged restriction.

Palermo states that he has been unable to practice Asatrú, an established religion to which he adheres, because he has been denied access to religious services, literature, items, and diet.  Palermo states that his ability to practice his religion and engage in religious observances has thus been significantly burdened because defendants Casico and Daly have denied the validity of his religion and the means to practice it.

Palermo has stated sufficient facts to allege that a substantial burden was placed on the exercise of his religion, and he has thus stated a claim that his rights under RLUIPA were violated by defendants Casico and Daly denying him religious services, objects, literature, and diet.  The court has directed, in an order issued simultaneously with this report and recommendation (the "Simultaneous Order"), that Palermo's RLUIPA claim be served on defendants Casico and Daly.

Palermo has not alleged that Stevenson did anything that substantially burdened Palermo's religious practice.  Palermo simply states that Stevenson agreed to look into the matter and never provided Palermo with a response.  These assertions are insufficient to assign potential liability for a constitutional violation to Stevenson.

### 2.   First Amendment

The First Amendment's Free Exercise Clause "requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people." Cutter v. Wilkinson, 544 U.S. 709, 719 (2005).  This provision applies to the states under the Fourteenth Amendment.  See Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 6 n.4 (2004).

"[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system," including the right to the free exercise of religion. Pell v. Procunier, 417 U.S. 817, 822 (1974); see also O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (citing Cruz v. Beto, 405 U.S. 319, 322 (1972)).  A prisoner's sincerely held religious beliefs must yield if they are contrary to prison regulations that are "reasonably related to legitimate penological interests."  See Beard v. Banks, 548 U.S. 521, 528 (2006) (quoting Turner v. Safley, 482 U.S. 75, 89 (1987)).  A court evaluating a claim that a prison regulation interfered with an inmate's rights under the First Amendment's Free Exercise Clause must accord prison administrators significant deference in defining legitimate goals for the corrections system, and for determining the best means of accomplishing those goals.  See Overton v. Bazzetta, 539 U.S. 126, 132 (2003); Pell, 417 U.S. at 826-27; Kuperman v. Wrenn, 645 F.3d 69, 74 (1st Cir. 2011).

Here, Palermo alleges that he was denied access to Asatrú religious services, religious items, religious literature, and a religious diet.  Palermo states that Casico and Daly denied him

these items on the basis that Asatrú is not a religion, but a
white supremacist group.  Palermo asserts that Asatrú is a
legitimate religion to which he adheres.  As such, Palermo
claims that the failure to provide him with the means to
practice his religion violates his First Amendment rights.  The
court can reasonably infer that the denial of religious
services, objects, literature, and diet could interfere with the
means by which Palermo could exercise his religion.  Nothing in
the record presently before the court reflects that Palermo's
religious practice would pose any threat to institutional
security.

At this stage of the proceedings, without evidence to the
contrary in the record, the court finds that Palermo has stated
that the denial of access to Asatrú services, objects,
literature, and diet, was unreasonable and improperly impinges
upon his First Amendment right to exercise his religion.  See
Sparks v. Dennehy, No. 08-11437-PBS, 2009 WL 6490086, *5 (D.
Mass. Nov. 16, 2009) (order approving report and recommendation)
(complaint alleging that plaintiffs, adherents of Asatrú, were
denied recognition of their religion, ritual items, and
religious services, literature, and observances stated claim
upon which relief could be granted, where record did not contain

19

facts to allow court to assess actions of corrections department).  Accordingly, in the Simultaneous Order, the court has directed that the complaint be served on defendants Casico and Daly.  For the same reasons outlined above, in the RLUIPA analysis, the facts are insufficient to assert a First Amendment claim against Stevenson.

### 3.  Equal Protection

The Fourteenth Amendment's Equal Protection Clause provides that no state shall "deny any person within its jurisdiction equal protection of the law."  U.S. Const. Amend. XIV.  This provision requires States to treat similarly situated people in a similar manner.  City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985).

Generally, to establish an equal protection claim, a plaintiff must demonstrate that, (1) compared with others similarly situated, he was selectively treated, and (2) that the selective treatment was motivated by purposeful discrimination on some improper basis, such as plaintiff's membership in a particular race or religion.  See Hernandez v. New York, 500 U.S. 352, 360 (1991).

Palermo alleges that he was discriminated against by Casico and Daly on the basis of his religion.  To assert a facially

valid equal protection claim for discrimination, Palermo must allege facts to demonstrate that Casico and Daly would have treated someone who is not of Palermo's religion differently than he was treated, as well as facts to allow the court to conclude that it was plausible that there was no compelling governmental interest in that differential treatment.  See Grutter v. Bollinger, 539 U.S. 306, 326 (2003) (citing Loving v. Virginia, 388 U.S. 1, 11 (1967)).

Palermo states that Casico flatly denied that Palermo's religion existed, and therefore deemed it not to be entitled to any protection.  Palermo further states that he requested religious literature from Daly, and that Daly refused to provide it to him.  Generously construing Palermo's complaint, the court finds that it asserts that the denial of religious literature was based on what Daly believed to be the content of Palermo's religious belief system, because Daly routinely provides free religious literature to inmates of other faiths.  Palermo also states that Daly denied him a religious diet, stating that religious diets were only provided to Jews, Muslims, and Buddhists.  Palermo has alleged sufficient facts to indicate that Casico and Daly treated Palermo differently based on his religion, than they did other similarly situated non-Asatrú

inmates.  The allegations are sufficient to assert a claim under the Equal Protection Clause against Casico and Daly, and in the Simultaneous Order, the court has directed that the complaint be served on those individuals.

VI.   Food Temperature

    A.   Facts

    Palermo alleges that while at the NHSP, he has been given cold meals that were supposed to be hot, and hot meals that were supposed to be cold.  Palermo claims that, as a result, he suffered diarrhea, upset stomach, and two occasions of "violent vomiting."

    B.   Legal Analysis

    To satisfy the Eighth Amendment, prisons must provide inmates with "nutritionally adequate food, prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it."  See Querido v. Wall, No. 10-098 ML, 2010 WL 5558915, *5 (D.R.I. Dec. 8, 2010) (quotation marks and citation omitted), report and recommendation adopted, 2011 WL 63503, *1 (Jan. 7, 2011).  Bald assertions of unsanitary or unhealthy food are insufficient to

allege a serious risk to an inmate's health or safety, and will thus not support an Eighth Amendment claim.  See id.

Palermo asserts only that he was provided with food that was not the right temperature, which caused him to experience incidents of gastrointestinal discomfort.  These assertions do not suffice to allege that Palermo was subjected to a risk of serious harm to his health.  Further, aside from being served food at the wrong temperature, Palermo has not alleged any manner in which the food failed to provide adequate nutrition, was improperly prepared, or was unsanitary.  Without specific facts identifying how the food was nutritionally inadequate or otherwise caused a serious risk of harm to his health, he cannot assert an Eighth Amendment claim.  Palermo's claim based on the temperature of his food should be dismissed.

VII. Retaliation

    A.   Facts

Palermo claims that NHSP employees have retaliated against him for engaging in litigation against the prison. Specifically, Palermo asserts that while housed in SPU, nurses there, including three presently identified only as Denise, Ann Marie, and Jacky, told Palermo that if he talked about suing them, they would have him "stripped and stronged," which the

23

court understands to mean that an inmate is stripped of his clothing, and physically restrained, unclothed, and placed on a suicide watch status, even though Palermo presented no risk of harm to himself or anyone else.

Palermo also alleges that after being housed at SPU, he was later housed in the NHSP's Special Housing Unit ("SHU").  Once he arrived at SHU, he made numerous inquiries to classification officers Kim Lacasse and Daniel Been as to where he was going to be housed after SHU.  Lacasse and Been told him, "seeing as you want to sue the prison mayby (sic) you need a stint out of state."  Palermo understood that statement to be a threat to transfer Palermo, designed to coerce him to discontinue his litigation against the prison.[5]

Palermo further claims that while he was in SPU, he requested his legal paperwork numerous times.  When Palermo requested his paperwork, C.O. Marion asked Palermo why he wanted it, and then told Palermo that he would not "giv[e] [Palermo] anything to help [Palermo] sue the prison system."

------

[5]Since the time this action was filed, it appears that Palermo has been moved out of state.  There is nothing in the record before the court providing an official statement of reasons for the transfer.

B.   Legal Analysis

The First Amendment shields prisoners from retaliation in response to their engaging in protected speech.  Ortiz v. Jordan, ___ U.S. ___, ___, 131 S. Ct. 884, 893 (2011) (citing Crawford-El v. Britton, 523 U.S. 574, 592 (1998)). "[G]overnment actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003); see also Ferranti v. Moran, 618 F.2d 888, 892 n. 4 (1st Cir. 1980) ("actions otherwise supportable lose their legitimacy if designed to punish or deter an exercise of constitutional freedoms").  In order to state a claim for retaliation for exercising his First Amendment rights, Palermo must allege: (1) the conduct which led to the alleged retaliation was protected by the First Amendment; (2) some adverse action at the hands of the prison officials; and (3) a causal link between the exercise of his First Amendment rights and the adverse action taken.  See Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011), cert. denied, ___ U.S. ___, No. 11-7348, 2012 WL 117653, *1 (Jan. 17, 2012).

### 1.   Protected Conduct

Palermo has a First Amendment right to file a lawsuit in this court complaining of unconstitutional conditions of confinement.  See Lewis, 518 U.S. at 405; Rhodes v. Chapman, 452 U.S. 337, 362 n. 9 (1981).  A threat to file suit is also conduct protected by the First Amendment.  See Powell v. Alexander, 391 F.3d 1, 17 (1st Cir. 2004).  Palermo therefore satisfies the first prong of a retaliation claim as he has a First Amendment right to file a lawsuit challenging unconstitutional conditions of confinement, or to state that he intends to do so.

### 2.   Adverse Acts

To satisfy the second prong of a retaliation claim, a prisoner must allege that he was subject to an adverse action in response to his protected conduct.  See Hannon, 645 F.3d at 48. "[T]hreats alone can constitute an adverse action if the threat is capable of deterring a person of ordinary firmness from engaging in protected conduct."  Hill v. Lappin, 630 F.3d 468, 474 (6th Cir. 2010).  However, de minimis adverse actions do not suffice to form the basis of a First Amendment retaliation claim.  See Starr v. Dube, 334 F. App'x 341, 342 (1st Cir. 2009).  "[A]n adverse act is not de minimis if it would chill or

silence a person of ordinary firmness from future First
Amendment activities." Id. (internal quotation marks and
citation omitted).

Generally, a transfer of an inmate from one institution to
another "does not constitute an adverse action since a transfer
is merely an ordinary incident of prison life." Jones v.
Caruso, 421 F. App'x 550, 553 (6th Cir. 2011) (citation
omitted). Accordingly, "an alleged retaliatory transfer
ordinarily should be characterized as de minimis" as a matter of
law. Id. (internal quotation marks and citation omitted).
Courts have excepted from this general rule situations in which
"foreseeable, negative consequences 'inextricably follow' from
the transfer – such as the prisoner's loss of his high-paying
job and reduced ability to meet with his lawyer." Id. (citation
omitted). "[T]o satisfy this exception, Plaintiff must
establish that (1) he suffered sufficiently negative
consequences, (2) that such inextricably resulted from his
transfer, and (3) Defendant knew or should have known that such
negative consequences would result from the transfer in
question." Northington v. Armstrong, No. 1:10 CV 424, 2011 WL
6967623, *7 (W.D. Mich. Aug. 12, 2011) (citing Jones, 421 F.
App'x at 553).

As to Palermo's specific allegations of subjection to threats of adverse acts at the prison, the court finds that the threat of being "stripped and stronged," as that practice is described by Palermo, suffices to allege that Palermo was threatened with an adverse act.  No other allegedly retaliatory act amounts to more than a de minimis response:  Palermo has not stated that a transfer out of state would necessarily be a transfer to worse conditions of confinement, cause him harm, or would otherwise constitute an act that was outside of the ordinary incidents of prison life, and neither has he stated that he was subjected to any actual harm due to Marion's withholding of his legal documents.

Palermo's assertions concerning an out-of-state transfer, and the withholding of records, without more, fail to allege adverse acts that would deter an inmate of ordinary firmness from exercising his First Amendment rights.  Accordingly, the court finds that as to Lacasse, Been, and Marion, Palermo has failed to assert that they engaged in more than de minimis adverse acts, and has not, therefore, alleged sufficient facts to state retaliation claims against those defendants.

3.   <u>Causation</u>

As to the third prong of Palermo's retaliation claim against the nurses, Palermo alleges that the nurse defendants made statements indicating that they would have Palermo "stripped and stronged" to punish him for or prevent him from engaging in litigation against them.  Those allegations suffice, at this stage of the proceedings, to satisfy the requirement that the adverse act be causally related to the exercise or threatened exercise of Palermo's First Amendment rights. Accordingly, Palermo has stated a retaliation claim upon which relief might be granted against the presently unnamed nurses.[6]

VIII. <u>Denial of Access to Grievance Procedures</u>

A.   <u>Facts</u>

Palermo alleges that after the nurses threatened to have him "stripped and stronged," Palermo made a request to C.O. Dion to be allowed to speak with NHSP Medical Director Stevenson. Palermo states that Dion responded, "Go fuck yourself."  Palermo never spoke with Stevenson.

---

[6]In the Simultaneous Order, the court grants Palermo leave to amend the complaint to identify the nurses by their full names.  Once Palermo does so, the court will direct service of this action on the nurses.

B.   Legal Analysis

Liberally construing these assertions, it appears Palermo attempts to state a claim that he was denied access to making a grievance, and thus was denied his First Amendment right to petition the government for a redress of grievances.  The facts in the complaint are insufficient to bear out that assertion. Palermo describes having a single verbal request rebuffed by Dion.  Palermo does not indicate that he was denied access to any of the administrative procedures established for making written requests and grievances at the prison.  As the complaint contains no allegation that Palermo was actually denied the ability to make requests or file grievances, the claim so asserted should be dismissed.

IX.  Supervisory Liability

A.   Facts

Palermo names DOC Commissioner William Wrenn, NHSP Warden Richard Gerry, and SPU Medical Director Stevenson to his complaint.  These individuals are employed in a supervisory capacity at the prison.  With the exception of the failure of Stevenson to follow-up with Palermo regarding his religious practices, addressed above, the complaint contains no allegations against these three individuals concerning acts or

omissions that deprived Palermo of any rights.  Accordingly, the court presumes that Palermo names these individuals as defendants to this action in their supervisory capacities.

    B.   <u>Legal Analysis</u>

    Supervisory liability under 42 U.S.C. § 1983 lies only where "an affirmative link between the behavior of a subordinate and the action or inaction of his supervisor exists such that the supervisor's conduct led inexorably to the constitutional violation."  <u>Maldonado v. Fontanes</u>, 568 F.3d 263, 275 (1st Cir. 2009) (internal quotations and citation omitted).  Here, Palermo has not stated any facts to support a claim that any supervisor's conduct or inaction "led inexorably" to any of the claims asserted in the complaint.  Accordingly, no claim of supervisory liability arises in the complaint, and any such claim intended to be asserted therein should be dismissed from this action.  In particular, the court should dismiss the claims asserted against Wrenn, Gerry, and Stevenson in their supervisory capacities.

X.   <u>Defendants Against Whom No Claim Has Been Stated</u>

    Palermo has named a number of defendants without asserting allegations sufficient to state a claim for which those

defendants are liable, including: Sgt. Barbral, Sgt. Brown, C.O. Dion, Sgt. Carroll, Cpl. Orlando, C.O. Rhodes, Cpl. Towers, C.O. Wrenn, C.O. Marion, and Classification Officers Lacasse and Been.  These defendants should be dismissed from this action.

### Conclusion

For the foregoing reasons, the court recommends that the claims asserting constitutional violations based on the conditions of confinement at SPU, the denial of access to the law library, the interference with Palermo's right to counsel, improper food temperature, the denial of access to grievance procedures, retaliation, and supervisory liability, be dismissed from this action.  The court further recommends that the following defendants be dismissed from this action: Commissioner Wrenn, Warden Gerry, Medical Director Stevenson, Sgt. Barbral, Sgt. Brown, C.O. Dion, Sgt. Carroll, Cpl. Orlando, C.O. Rhodes, Cpl. Towers, C.O. Wrenn, C.O. Marion, Classifications Officers Lacasse and Been, and the three nurses identified herein by first name only.  The dismissal of these defendants should be without prejudice to Palermo renewing the retaliation claim asserted against the nurses once Palermo identifies them by their full names.  In the Simultaneous Order, the court directs

service of the RLUIPA, Free Exercise, and Equal Protection claims on defendants Casico and Daly.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). Failure to file objections within the specified time waives the right to appeal the district court's order. See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011), cert. denied, ___ U.S. ___, No. 11-7832, 2012 WL 33578, *1 (Jan. 9, 2012); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

_____
Landya McCafferty
United States Magistrate Judge

February 8, 2012

cc: Christopher M. Palermo, pro se

LBM:jba